LATHAM & WATKINS LLP
Nicole C. Valco (CA Bar No. 258506)
nicole.valco@lw.com
Brett M. Sandford (CA Bar No. 302072)
brett.sandford@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: +1.415.391.0600

*Attorneys for Defendant PROCEPT BioRobotics Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AQUABEAM LLC,<br><br>Plaintiff,<br><br>v.<br><br>PROCEPT BIOROBOTICS CORPORATION,<br><br>Defendant. | Case No. 5:26-cv-11924<br><br>**DEFENDANT PROCEPT BIOROBOTICS CORPORATION'S NOTICE OF REMOVAL**<br><br>*From the Superior Court of the State of California, County of Santa Clara, Case No.* 26CV500791 |

# REDACTED

**TO THE CLERK OF COURT, PLAINTIFF, AND COUNSEL OF RECORD:**

1. **PLEASE TAKE NOTICE** that, under 28 U.S.C. §§ 1338, 1441, 1446, and 1454, Defendant PROCEPT BioRobotics Corporation ("Procept") removes the above-captioned case—reserving all claims, defenses, and rights—from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California.

2. Solely to establish this Court's jurisdiction, Procept assumes the truth of Plaintiff AquaBeam LLC's ("AquaBeam") allegations. Procept denies that AquaBeam's claims have merit, waives no defense or objection, and reserves the right to amend or supplement this Notice.

## I. BACKGROUND

3. On August 13, 2026, AquaBeam filed its complaint ("Complaint") in the Superior Court of the State of California, County of Santa Clara, styled *AquaBeam LLC v. PROCEPT BioRobotics Corp.*, Case No. 26CV500791 (the "State Court Action"). Procept was served on August 17, 2026. A copy of the Complaint is included in Exhibit A hereto.

4. At a high level, this dispute concerns the scope of AquaBeam's exclusive patent license and Procept's related patent prosecution and maintenance obligations under the parties' Amended and Restated Exclusive License Agreement effective September 13, 2019 (the "2019 Agreement"), which is Exhibit 1 to the Complaint (*i.e.*, "Ex. 1"). Under the 2019 Agreement, AquaBeam holds an exclusive license to "Procept Patents" outside the Field of urology. Compl. ¶ 22; Ex. 1 §§ 2.3.2 (license to AquaBeam), 1.13 (defining "Field").

5. The 2019 Agreement defines "Procept Patents" as:

> [A]ll Patent Rights owned by Procept as a result of its own research and development activities that claim any methods, apparatus, or systems for the delivery of energy to tissue by directing a liquid fluid stream at the tissue and that are filed on or after the Original Effective Date until the earlier of (a) the tenth anniversary of the First Amendment Date or (b) the date on which all or substantially all of Procept's assets, stock or business is acquired by a third party. For clarity, (i) Procept Patents shall not include any Patent Rights that are owned by Procept as a result of an acquisition or purchase of such Patent Rights from any Third Party and (ii) the Procept Patents as of the Effective Date are listed on Exhibit B hereto.

Compl. ¶ 23; Ex. 1 § 1.24.

6. Section 3.3.1(a) sets out Procept's prosecution and maintenance obligations for the Procept Patents:

> Except upon a Procept Patent Abandonment, Procept shall be responsible, at its sole discretion, for the Prosecution and Maintenance of the Procept Patents in every jurisdiction worldwide, and for determining strategy with respect thereto, and for activities related to Other Patent Proceedings relating to the Procept Patents. Procept agrees to act in a commercially reasonable manner with respect to the Prosecution and Maintenance of the Procept Patents. Procept shall keep AquaBeam apprised of any material and non-ministerial activities related to the Procept Patents by providing AquaBeam with copies of official actions, amendments and responses with respect to the Prosecution and Maintenance of the Procept Patents. AquaBeam shall have the right to make reasonable recommendations to Procept concerning material activities related to the Prosecution and Maintenance of the Procept Patents to the extent not relating to the Field, and Procept shall consider in good faith such recommendations made by AquaBeam with respect to such activities. Any input provided by AquaBeam to Procept with respect to the Prosecution and Maintenance of the Procept Patents shall be deemed to be the Confidential Information of Procept.

Compl. ¶ 28; Ex. 1 § 3.3.1(a).

7. AquaBeam alleges that "Procept has taken the position that AquaBeam's license excludes patents and patent applications that do not include claims explicitly reciting 'delivery of energy to tissue by directing a liquid fluid stream at the tissue.'" Compl. ¶ 5. AquaBeam contends that this reading "departs from the structure of the 2019 Agreement's licensing framework." *Id.* In other words, as explained below, AquaBeam asks the Court to disregard what the patent claims actually recite and instead decide what the claimed subject matter "may be part of or incorporated into." *Id.* ¶¶ 6 (emphasis omitted), 41, 45, 48, 52.

8. AquaBeam thus seeks a declaration that "Procept Patents" include not only the patents listed on Exhibit B and their families, but also every Procept patent and application filed between December 10, 2008 and October 28, 2021 that claims "subject matter that may be *part of* or *incorporated into*" a fluid-stream method, apparatus, or system, "regardless of whether" its claims recite one. Compl. ¶ 6 (emphasis in original).

9. AquaBeam also alleges that Procept "fail[ed] to keep AquaBeam apprised of material and non-ministerial activities related to all of the Procept Patents by failing to provide AquaBeam with copies of official actions, amendments and responses with respect to the prosecution and maintenance of certain Procept Patents." Compl. ¶ 6.

10. Based on these allegations, AquaBeam asserts four causes of action: (1) declaratory judgment on the scope of its exclusive license to the Procept Patents; (2) declaratory judgment on Procept's prosecution and maintenance obligations for the Procept Patents; (3) breach of contract for Procept's alleged failure to meet those obligations; and (4) breach of the implied covenant of good faith and fair dealing. *See generally* Compl. ¶¶ 38-63.

11. As discussed below, Procept removes the State Court Action on the basis of federal question jurisdiction and, alternatively for Counts III and IV, the Court's supplemental jurisdiction.

12. The parties also expressly contemplated litigating in this Court. In the 2019 Agreement, each party "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction of the … California [state courts] *and the United States District Court for the Northern District of California*." Compl. ¶¶ 12, 29; Ex. 1 § 9.3 (emphasis added).

## II. THIS COURT HAS FEDERAL QUESTION JURISDICTION BECAUSE AQUABEAM'S CLAIMS ARISE UNDER FEDERAL PATENT LAW

13. Federal district courts have original jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a); *see* 28 U.S.C. § 1331; *Gunn v. Minton*, 568 U.S. 251, 264 (2013). Any such action in which "any party asserts a claim for relief arising under" the patent laws may be removed to federal district court. 28 U.S.C. § 1454(a). Removal therefore requires only one claim arising under federal patent law, even if other claims arise under state law. *See id.*

14. Under *Grable* and *Gunn*, a state-law claim arises under federal patent law if the "embedded" federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 568 U.S. at 258; *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). A case meeting these requirements "sensibly belongs in a federal court," irrespective of the causes of action. *Grable*, 545 U.S. at 315.

15. A state-law contract claim can satisfy *Grable-Gunn* when its resolution requires resolving an issue of federal patent law. *See, e.g.*, *Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336-38 (Fed. Cir. 2014) (contract claim under a patent assignment agreement satisfied *Grable-Gunn*

because "resolution of the contract claim itself requires resolution of underlying issues of infringement"); *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-cv-04718, 2016 WL 1365946, at *5-6 (N.D. Cal. Apr. 6, 2016) (royalty dispute arose under patent law because breach turned on whether licensee used patented processes); *Genomic Health, Inc. v. Incyte Corp.*, No. 10-cv-03643, 2010 WL 11586744, at *2-3 (N.D. Cal. Nov. 5, 2010) (denying remand where licensee's claim required showing that its product fell outside the scope of licensor's patent).

16. Each *Grable-Gunn* requirement is met here. Counts I and II seek declarations defining which patents are "Procept Patents" under AquaBeam's exclusive license and, in turn, Procept's prosecution and maintenance obligations. Compl. ¶¶ 45, 52. That relief necessarily turns on patent claim scope, which requires adjudicating disputed and substantial issues of patent law that properly "belong[] in a federal court." *See infra* Part II.A; *Grable*, 545 U.S. at 315; *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007).

17. Counts III and IV turn on the same question. They allege that Procept breached Section 3.3.1 of the 2019 Agreement and an implied covenant by failing to provide prosecution materials for "all Procept Patents." Compl. ¶¶ 53-63. Whether Procept owed AquaBeam those materials for any given application depends on whether it is a "Procept Patent"—the same claim-scope question. All four counts therefore belong in federal court. *Grable*, 545 U.S. at 315.

### A. AquaBeam's Claims Necessarily Raise Federal Patent Law Issues

18. AquaBeam's requested relief necessarily raises questions of federal patent law. *Grable*, 545 U.S. at 314. AquaBeam alleges that "Procept Patents" encompasses patents and applications based on what their claims cover when read in light of their specifications. *See* Compl. ¶¶ 6, 24, 45, 52. Claim scope is a question of patent law that "can be complex in that it may involve many claim construction doctrines." *Immunocept*, 504 F.3d at 1285 ("Litigants will benefit from federal judges who are used to handling these complicated rules.").

19. The 2019 Agreement defines "Procept Patents" as certain patents and patent applications owned by Procept "that claim any methods, apparatus, or systems for the delivery of energy to tissue by directing a liquid fluid stream at the tissue." Compl. ¶ 23; Ex. 1 § 1.24. Yet AquaBeam alleges that claim language cannot serve "as a gatekeeper" for whether a patent or

application is a "Procept Patent." Compl. ¶ 5; *see also id.* ¶ 32. Instead, AquaBeam seeks declarations that "Procept Patents" include two groups of patents and applications:

> (i) all patents and applications listed on Exhibit B to the 2019 Agreement and all Patent Rights within the same patent families thereof, … and
>
> (ii) all patents and patent applications owned by Procept …, filed [within a defined period] that claim **subject matter that may be part of or incorporated into** a method, apparatus, or system for delivery of energy to tissue by directing a liquid fluid stream at the tissue, **regardless of whether the patent or patent application has claims that directly recite**, in form or substance, the 'delivery of energy to tissue by directing a liquid fluid stream at the tissue,' and all Patent Rights within the same patent families thereof.

Compl. ¶¶ 45, 52 (emphasis added); *see* Compl. Prayer for Relief (seeking relief "in accordance with … Paragraphs 45 and 52 of this Complaint").

20. To support its allegations, AquaBeam relies on the definition's final sentence, which states that "the Procept Patents as of the Effective Date are listed on Exhibit B." Compl. ¶ 23; Ex. 1 § 1.24. But AquaBeam seeks far more than a declaration covering the Exhibit B patents (group (i)). It also seeks a declaration covering every patent and application filed within the contractual window whose claimed **subject matter "may be part of or incorporated into** a method, apparatus, or system for delivery of energy to tissue by directing a liquid fluid stream at the tissue" (group (ii)), plus all Patent Rights within the patent families of both groups. Compl. ¶¶ 45, 52.

21. AquaBeam's own allegations and requested declarations thus require the Court to decide whether the claimed subject matter of Procept's patents and applications "may be part of or incorporated into a method, apparatus, or system for delivery of energy to tissue by directing a liquid fluid stream at the tissue." Compl. ¶ 6 (emphasis omitted). That question turns on the scope of patent claims construed in light of their specifications under patent law. *See Immunocept*, 504 F.3d at 1285; *see also Ameranth, Inc. v. ChowNow, Inc.,* No. 20-cv-02167, 2021 WL 3686056, at *10-12 (S.D. Cal. Aug. 19, 2021) (denying remand where royalty obligations depended on whether licensee practiced the licensed patents, which "would require the Court to interpret the Licensed Patents.") The *Ameranth* inquiry—what falls within the scope of claimed subject matter—is the very inquiry AquaBeam seeks here. AquaBeam pleads no way to prevail—particularly as to the

unlisted group (ii) patents—without resolving that patent law question. *See, e.g.*, *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 281 (5th Cir. 2011) ("USPPS's claims therefore depend upon resolving at least one issue of patent law in its favor."); *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP*, 183 Cal. App. 4th 238, 251 (2010) ("[T]he complaint does not ... lend itself to alternative theories that do not call for determination of a substantial federal issue . . . .").

22. AquaBeam's own example shows the patent-law inquiry its relief requires. AquaBeam alleges that [redacted] is listed on Exhibit B even though it does "not include claims that recite, in form or substance, the 'delivery of energy to tissue by directing a liquid fluid stream at the tissue.'" Compl. ¶ 24. AquaBeam nonetheless contends that [redacted] is a "Procept Patent" because its claims [redacted] *Id.* To support that contention, AquaBeam relies on the specification to show that [redacted] can be incorporated into [redacted] *Id.* AquaBeam's contentions thus rest entirely on a textbook claim-construction exercise under Federal Circuit law: reading claims in light of the specification to determine what they cover. Federal judges are "used to handling" such patent-specific issues. *Immunocept*, 504 F.3d at 1285. The parties recognized as much when they consented to the exclusive jurisdiction of "the United States District Court for the Northern District of California" in the 2019 Agreement. Ex. 1 § 9.3.

**B. The Federal Issues Are Actually Disputed**

23. The parties "actually dispute" which claims qualify a patent or application as a "Procept Patent"—indeed, "it is the central point of dispute." *Gunn*, 568 U.S. at 259. AquaBeam's Complaint says as much:

> Procept has refused to recognize that the Procept Patents within the scope of the exclusive license granted to Plaintiff under the 2019 Agreement include patents and patent applications whose claims do not expressly recite the "delivery of energy to tissue by directing a liquid fluid stream at the tissue." Procept also appears to refuse to recognize that all patents and patent applications listed on Exhibit B of the 2019 Agreement and all Patent Rights within the same patent families thereof … are Procept Patents within the scope of the exclusive license granted to Plaintiff.

> As such, a present and actual controversy exists between Plaintiff on the one hand and Procept on the other concerning their respective rights, duties, and obligations with respect to the scope of Plaintiff's exclusive license and Procept's obligations concerning the Procept Patents.

Compl. ¶¶ 42-43; *see also id.* ¶¶ 32 (AquaBeam rejecting an approach that "treat[s] claim wording as a gatekeeper for portfolio membership"), 45 (alleging that, "regardless of whether the patent or patent application has claims that directly recite, in form or substance, the 'delivery of energy to tissue by directing a liquid fluid stream at the tissue,'" the Court should consider whether claimed subject matter "may be part of or incorporated into a method, apparatus, or system"), 49-50.

24. The federal patent issue is thus "actually disputed." *Gunn*, 568 U.S. at 259. It is the heart of this case: AquaBeam identifies no disagreement about the 2019 Agreement that can be resolved without deciding what Procept's patent claims cover.

**C. The Patent Law Issues Are Substantial**

25. The claim scope issue embedded in each count is a "substantial" question of patent law. Substantiality turns not on the issue's importance to the parties, but on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Federal Circuit has recognized that "validity and claim scope" are "substantial to the federal system as a whole." *Warsaw Orthopedic, Inc. v. Sasso*, 977 F.3d 1224, 1229 (Fed. Cir. 2020); *see also Immunocept*, 504 F.3d at 1285 ("Because patent claim scope defines the scope of patent protection, . . . we surely consider claim scope to be a substantial question of patent law."). Four features of this case independently confirm that conclusion.

26. First, the disputed patent issues are forward-looking. "In assessing the substantiality of patent issues, courts draw a meaningful distinction between 'backward-looking' and 'forward-looking' issues." *AEP Excluded AssetCo, LLC v. Bellanergy, LLC*, No. 23-cv-3638, 2024 WL 385695, at *4 (S.D. Tex. Feb. 1, 2024). "'Backward-looking' patent issues present no live questions" and their resolution "bears no risk of impacting patent-holder's rights," while forward-looking issues "pose questions involving live patents, and their resolution risks impacting patent-holder's rights." *Id.* at *4-5 (citing *Gunn*, 568 U.S. at 261-62); *see also Jang*, 767 F.3d at

1337 (contract claims turning on patent issues "raise[d] the real world potential for subsequently arising infringement suits affecting other parties").

27. Here, AquaBeam asks the Court to declare, prospectively, which of Procept's live patents and pending applications are "Procept Patents." That ruling would define: (1) the scope of AquaBeam's exclusive license and its right to sublicense "Additional Licensees outside the Field" (Ex. 1 §§ 2.3.2, 2.3.3); (2) non-party HydroCision's license rights "in the fields of tenotomy, spinal fusion, spinal discectomy and thrombectomy" (*id.* § 2.3.2); (3) Procept's ownership rights (*id.* § 2.7); (4) Procept's ongoing prosecution and maintenance obligations (*id.* § 3.3.1); and (5) each party's right to sue third-party infringers (*id.* §§ 3.2.2(b)-(c), 3.3.2). AquaBeam holds the first right to sue for infringement of Procept Patents occurring outside the Field. *Id.* § 3.3.2. The declaration would therefore decide who may assert which patents against which accused infringers, who may license them, and how recoveries are shared—in short, who may monetize these patents at all. Where, as here, "resolution of the contract claim itself" requires resolving patent issues, "the potential for inconsistent judgments affecting not only the parties to this dispute but other parties who might be sued . . . is particularly significant." *Jang*, 767 F.3d at 1337-38.

28. Second, the issue reaches pending prosecution before the United States Patent and Trademark Office and foreign patent offices. Count II seeks a declaration controlling which application materials Procept must share with AquaBeam, and on which AquaBeam may make recommendations, as Procept prosecutes them. Compl. ¶¶ 47-52; Ex. 1 § 3.3.1(a). AquaBeam has already put [redacted] and parses specific claims of [redacted]. Compl. ¶¶ 33-34, 57, 62. Because claims are amended during prosecution, a ruling tying "Procept Patent" status to whether claimed subject matter "may be part of or incorporated into" a fluid-stream system would require repeated claim-scope determinations as those applications evolve.

29. Third, AquaBeam's theory sweeps in an open-ended, growing body of patents. AquaBeam seeks coverage not only of identified patents but of "all Patent Rights within the same patent families thereof," which by definition include continuations, divisionals, and continuations-in-part not yet filed. Compl. ¶¶ 45, 52; Ex. 1 § 1.20. Under AquaBeam's theory, the requested

declarations could thus govern the scope of future patent claims for the life of those families. *See* Ex. 1 § 8.1 (term runs until the last-to-expire Procept Patent Valid Claim).

30. Fourth, AquaBeam asks the Court to adopt a novel claim-scope test: whether claimed subject matter "may be part of or incorporated into" a fluid-stream method, apparatus, or system "regardless of whether" the claims recite one. Compl. ¶¶ 45, 52. That test would define what a claim covers by reference to products and systems beyond the claim's own limitations. How claims are read in light of the specification, and whether a claimed component "covers" a larger system, are patent-law questions on which uniformity matters. *See Immunocept*, 504 F.3d at 1285. Leaving them to a state court risks claim-scope rulings that conflict with later federal constructions of the same claims in infringement or validity proceedings—proceedings that are appealable only to the Federal Circuit. *See Jang*, 767 F.3d at 1337-38; 28 U.S.C. § 1295(a)(1).

31. In short, for at least the reasons above, AquaBeam's Complaint does not raise a "fact-bound and situation-specific" dispute about past events. Instead, it seeks a forward-looking ruling on the scope of live patent claims that will govern licensing, enforcement, and prosecution for years, with effects on the parties, licensees, accused infringers, and various patent offices. The federal issue is substantial.

**D. Adjudication in Federal Court Will Not Disrupt the Federal-State Balance**

32. The fourth *Grable-Gunn* requirement "typically tracks the third; a substantial federal issue is unlikely to disrupt the federal-state balance." *AEP*, 2024 WL 385695, at *5. Congress gave federal courts exclusive original jurisdiction over claims arising under the patent laws, and the Federal Circuit exclusive appellate jurisdiction over them. 28 U.S.C. §§ 1338(a), 1454, 1295(a)(1); *USPPS*, 647 F.3d at 284 (recognizing "the special federal interest in developing a uniform body of patent law in the Federal Circuit" for substantial "issues of patent law"). Exercising jurisdiction over contract claims that present substantial patent questions does not disturb that balance. *See, e.g.*, *Jang*, 767 F.3d at 1336; *Gunn*, 568 U.S. at 258. Claim scope lies at the core of the federal patent system, and "federal judges . . . are used to handling" the "many claim construction doctrines" it involves. *Immunocept*, 504 F.3d at 1285.

33. Jurisdiction here also matches the parties' expectations with respect to the *patent* license agreement at issue: both consented to "the United States District Court for the Northern District of California" for disputes arising out of the 2019 Agreement. Ex. 1 § 9.3; *see also* Compl. ¶ 29 (acknowledging the same).

## III. ALTERNATIVELY, THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER COUNTS III AND IV

34. To the extent Counts III and IV do not satisfy the *Grable-Gunn* test, this Court has supplemental jurisdiction over those claims. 28 U.S.C. §§ 1367(a), 1454(d). Section 1367(a) extends jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." That standard is met when "[t]he state and federal claims . . . derive from a common nucleus of operative fact." *Zunum Aero, Inc. v. Boeing Co.*, No. 24-cv-5212, 2026 WL 2509406, at *9-11 (9th Cir. Aug. 26, 2026) (affirming supplemental jurisdiction over contract claims after removal); *see also Ameranth, Inc. v. Splick-It, Inc.*, No. 17-cv-1093, 2017 WL 11422186, at *2 (S.D. Cal. Aug. 4, 2017) (exercising supplemental jurisdiction over state-law breach-of-license claims after removal).

35. All four claims derive from a common nucleus of operative fact—they arise from the same 2019 Agreement and depend on the same definition of "Procept Patents." Counts III and IV allege that Procept breached its obligation to provide prosecution materials for "all Procept Patents"—the same obligation Count II asks the Court to define. Compl. ¶¶ 47-52, 57, 62. Counts III and IV thus share a common nucleus of operative fact with Counts I and II and fall within this Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

## IV. PROCEDURAL REQUIREMENTS

36. The Northern District of California is the appropriate court for removal because the Santa Clara County Superior Court where the removed case was pending is located within this District. *See* 28 U.S.C. §§ 84(a), 1441(a), 1446(a).

37. Pursuant to 28 U.S.C. § 1446(a), attached hereto as Exhibits A-J are true and correct copies of the materials filed in the State Court Action, including the Complaint and all process, pleadings, and orders served upon Procept in this case to date:

a. A copy of the Complaint and its Exhibits 1-3, which were filed as a single document and under seal in the State Court Action, is attached hereto as **Exhibit A.**

b. A copy of the Redacted Complaint and its Exhibits 1-3, filed as a single document in the State Court Action, is attached hereto as **Exhibit B.**

c. A copy of the Summons is attached hereto as **Exhibit C**.

d. A copy of the Civil Cover Sheet is attached hereto as **Exhibit D**.

e. A copy of the Motion to Seal the Complaint is attached hereto as **Exhibit E**.

f. A copy of the Declaration of Nikolai Aljuri Ph.D. in Support of Motion to Seal the Complaint is attached hereto as **Exhibit F.**

g. A copy of the Proof of Service of Summons and Complaint is attached hereto as **Exhibit G.**

h. A copy of the Stipulation and Proposed Order Continuing Response to Complaint is attached hereto as **Exhibit H.**

i. A copy of the Order Continuing Response to Complaint is attached hereto as **Exhibit I.**

j. A copy of the Santa Clara County Superior Court docket sheet is attached hereto as **Exhibit J.**

38. Procept has not yet filed an answer or other response to the Complaint in the Santa Clara County Superior Court and is not aware of any pending motions filed in that court.

39. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

40. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on AquaBeam's counsel and a copy, along with a notice of filing of the notice of removal, is being filed with the Clerk of Santa Clara County Superior Court, California.

## V. GOOD CAUSE EXISTS TO EXTEND THE TIME FOR REMOVAL

41. A notice of removal "shall be filed within 30 days" after a defendant receives "a copy of the initial pleading" or "summons" if the initial pleading is not required to be served,

"whichever period is shorter." 28 U.S.C. § 1446(b)(1). But "the time limitations contained in section 1446(b) may be extended at any time for cause shown." *Id.* § 1454(b)(2).

42. Courts look to Federal Rule of Civil Procedure 6(b) to assess "cause." *See, e.g., Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, No. 19-cv-2953, 2019 WL 5457705, at *2 (S.D. Tex. Oct. 24, 2019). "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts," *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010), and generally requires showing that the relief is "reasonable, justified, and would not result in prejudice to any party," *id.* at 1260.

43. Courts find good cause where the delay is modest, the state-court action has not meaningfully progressed, and the plaintiff would suffer no prejudice if the delay is excused. In *Recif*, the court found that a delay of over 100 days "was not substantial" and posed "little potential for prejudice" because there was "no adverse impact on [plaintiff's] ability to obtain discovery." 2019 WL 5457705, at *2-3. The court did so even though the reason for delay weighed against extension. *Id.* at *3. Similarly, in *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, the court found good cause for a 71-day delay because it was "not apparent how the short delay" prejudiced the plaintiff, there had "not been extensive litigation in the state court action," and "no dispositive motions were adjudicated on the merits before removal." No. 20-cv-882, 2020 WL 5269946, at *3 (W.D. Wash. Sept. 4, 2020). In *Van Steenburg v. Hageman*, the court found good cause for a 21-day delay because "no action was taken" in state court, so "the late removal had no impact on the proceeding and did not result in prejudice to Plaintiffs." No. 14-cv-976, 2015 WL 1509940, at *6 (W.D. Tex. Mar. 31, 2015). And in *Donahue v. Tokyo Electron Am., Inc.*, the court found that a delay of "approximately three weeks" had a "minimal possibility of prejudice." No. 14-cv-563, 2014 WL 12479285, at *7 (W.D. Tex. Sept. 2, 2014).

44. To the extent necessary, the Court should extend the time for removal under 28 U.S.C. § 1454(b)(2). Procept was served on August 17, 2026, so the 30-day period under § 1446(b)(1) ran on or about September 16, 2026. Procept files this Notice on October 15, 2026,

29 days (20 business days) later.[1] Good cause exists because the delay is minimal, reasonable, and justified, and AquaBeam will suffer no prejudice.

45. First, the case is at its earliest stage. Procept has not responded to the Complaint, no motion other than a motion to seal the Complaint is pending, and no hearings have been held. AquaBeam will suffer no prejudice.

46. Second, the delay is reasonable and justified. After AquaBeam served its Complaint, the parties continued exploring a potential resolution to their dispute. During that time, an unforeseen conflict arose with the attorney and law firm that Procept initially engaged as litigation counsel. The parties were unable to work through the conflict, which was finally determined on September 8, 2026. Immediately thereafter, Procept diligently sought new counsel, and the undersigned took over as litigation counsel on or around September 15, 2026.

47. Once engaged, undersigned counsel promptly analyzed the Complaint's four counts and more than 60 allegations, the three agreements between the parties (including over 25 defined terms in the 2019 Agreement alone), and the dozens of patents implicated by AquaBeam's allegations. Procept then filed this Notice.

48. Given the early stage of this case, the lack of activity in the state court case, the lack of prejudice to AquaBeam, Procept's continued good-faith efforts to resolve the dispute, the unforeseen conflict, and the complexity of the case, the short delay of at most four weeks was reasonable and justified. The Court should find good cause to excuse it.

## VI. CONCLUSION

49. Procept respectfully requests that this Court exercise jurisdiction over this case and enter such orders as may be necessary to effect removal and to prevent further proceedings in the Santa Clara County Superior Court.

---

[1] Procept attempted to file its Notice of Removal and accompanying case-initiation documents on October 14, 2026. However, an outage in PACER's Manage My Account system prevented access to the Pay.gov portal required to pay the filing fee and initiate the action. Despite repeated attempts to access the system, the outage persisted throughout the evening and prevented the filing.

Dated: October 15, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By *<u>/s/ Nicole C. Valco</u>*

Nicole C. Valco (CA Bar No. 258506)
nicole.valco@lw.com
Brett M. Sandford (CA Bar No. 302072)
brett.sandford@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: +1.415.391.0600

*Attorneys for Defendant PROCEPT BioRobotics Corporation*